**W. C. JAMES, INC., Appellant,**

v.

**OIL, CHEMICAL AND ATOMIC WORK-
ERS INTERNATIONAL UNION; Oil,
Chemical and Atomic Workers Interna-
tional Union, Local No. 4–449; J. C.
Turner and Russell T. Conlon, Repre-
sentatives of the Members of Interna-
tional Union of Operating Engineers;
and Clarence D. La Chance and Donald
Morgan as Representatives of the Mem-
bers of International Union of Operat-
ing Engineers, Local No. 234, Appellees.**

No. 80–1519.

United States Court of Appeals,
Eighth Circuit.

Submitted March 10, 1981.

Decided April 27, 1981.

P. L. Nymann, argued, Jacobs, Gaul, Ny-
mann & Green, Sioux City, Iowa, for W. C.
James, Inc.

Barbara J. Hillman, argued, and Arnold
S. Rosenberg, Cornfield & Feldman, Chica-
go, Ill. (John R. Tadlock, Denver, Colo., of
counsel), for defendants-appellees.

Barry J. Levine, Gruenberg, Souders, &
Levine, St. Louis, Mo., for Operating Engi-
neers Local 234.

MacDonald Smith, Sioux City, Iowa, for defendants-appellees J. C. Turner and Russell T. Conlon, Representatives of the members of International Union of Operating Engineers.

Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

ROSS, Circuit Judge.

Plaintiff, W. C. James, Inc., appeals from an order of the district court[1] granting summary judgment in an action for alleged breach of a prehire agreement by defendant unions. Count I of the complaint sought damages for breach of contract from Dome Pipeline Company and Williams Brothers Engineering Company.[2] Count II sought damages against the Oil, Chemical and Atomic Workers International Union (OCAW) and its Local No. 4–449 (Local 4–449) for breach of the prehire agreement. Count III sought damages against the International Union of Operating Engineers (IUOE) and its Local No. 234 (Local 234) alleging inducement to breach and tortious interference with the contracts described in Counts I and II. Jurisdiction of the court over Count II was grounded on § 301 of the National Labor Relations Act, 29 U.S.C. § 185. Jurisdiction over Counts I and III was grounded on diversity of citizenship (Counts I, III) and on pendent jurisdiction (Count III).

Summary judgment was denied as to that portion of Count III alleging tortious interference by IUOE. On May 12, 1980, the parties stipulated that this case was to be dismissed without prejudice whereupon the district court entered an order dismissing the action subject to the parties' stipulations.[3]

The district court based its grant of summary judgment on three alternative grounds: (1) that any agreement was unenforceable because OCAW lacked majority status; (2) that any agreement was illegal because procured by unlawful union assistance by James; and (3) that any agreement was nonexistent because withdrawn by OCAW prior to its execution by James. The court concluded further that since the underlying prehire agreement was void, illegal, nonexistent or otherwise unenforceable, there can be no recovery for inducement of its breach by IUOE. We affirm.

*Facts*

Plaintiff, W. C. James, Inc., is a pipeline construction contractor and on July 15, 1977, was awarded the Iowa portion (Spread 6) of a multistate pipeline project by the project's general contractors, Dome Pipeline Corporation and Williams Brothers Engineering Company. Members of IUOE were employed by James and worked on the Spread 6 project. Subsequent to July 15, 1977, a representative of the IUOE or its Local No. 234 made contact with Williams Brothers, James, and OCAW.

By letter dated July 26, 1977, James contacted OCAW concerning terms of a prehire agreement with OCAW that would be applicable to employees working on Spread 6. Following a series of conferences by phone and in person, a document entitled "Pipeline Agreement as Amended" was sent by OCAW to James by mail on August 18, 1977. The agreement had been signed by an OCAW representative and contained a union security clause.

1. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

2. Count I was dismissed pursuant to a stipulation among the parties on April 22, 1980.

3. The stipulation reserved the right to refile the identical causes of action should the district court's summary judgment be reversed by this court. By so voluntarily dismissing the tortious interference claim, the parties converted the district court's partial summary judgment into an appealable order, thereby securing jurisdiction for an immediate appeal without a Rule 54(b) certification. We disapprove of this circumvention of Rule 54(b) and allowed the appeal to go forward only after assurance at oral argument that should we affirm, the dismissed claim will not be refiled.

On August 19, 1977, OCAW sent James a telegram stating: "This is to inform you that OCAW Local 4-449 cannot enter into an agreement with your company due to Article XX of the AFL-CIO Constitution. We have been informed by the OCAW President that [that] contract would be in violation of [the] AFL-CIO Constitution." This telegram was received by James before it received the agreement by mail. As a result of failing to secure a prehire agreement, a condition of its contract with Dome-Williams, James was pulled off the Spread 6 project and was not permitted to return.

No employees working for James on Spread 6 were ever paid on the basis of the wage rate set forth in the agreement nor were any union dues or initiation fees ever forwarded by James to OCAW.

At the hearing on motions for summary judgment, James conceded it could not prove through authorization cards or otherwise that OCAW ever represented a majority of the employees on the project, either at the time of negotiation or thereafter.

*Discussion*

Section 8(f) of the National Labor Relations Act permits an employer engaged in the building and construction industry to enter into a prehire agreement with a labor organization before the majority status of that organization has been established in accordance with the recognitional provisions of the Act. In pertinent part, 29 U.S.C. § 158(f) provides:

> (f) It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) of this section as an unfair labor practice) be-

cause (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, * * * *Provided further,* That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.

In *NLRB v. Irvin*, 475 F.2d 1265 (1973) the Third Circuit explained the rationale for allowing such agreements:

> [8(f)] was adopted to meet specific problems which had arisen in the construction industry under the prior law because of the transitory nature of the employer-employee relationship in that industry. * * In summary, prehire agreements which would otherwise be invalid were authorized in the construction industry because of the dual necessities (1) that construction bidders know in advance of bid what their labor costs would be, and (2) that construction employers have access to an available pool of skilled craftsmen for quick reference.

*Id.* at 1267.

█ We agree with the district court's interpretation of § 158(f) as expressed in its order of May 8, 1980:

> It should be noted, however, that Section 158(f) does not state that pre-hire agreements are automatically enforceable in court; it merely states that entering into such agreements will not constitute an unfair labor practice under specified conditions.

█ The enforceability of such agreements was considered by the Supreme Court in *NLRB v. Local No. 103, Iron Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978). There, a union having a prehire agreement with a construction employer, but lacking a majority status among the employees at the time, picketed the employer at several project sites in an effort to enforce the prehire agreement. The NLRB determined that it is an unfair

labor practice within the meaning of § 8(b)(7)(C) [recognitional picketing] for an uncertified union, not representing a majority of the employees, to engage in such picketing. In upholding the Board's determination, the Court stated:

> [A] prehire agreement does not entitle a minority union to be treated as the majority representative of the employees until and unless it attains majority support in the relevant unit. Until that time the prehire agreement is voidable and does not have the same stature as a collective-bargaining contract entered into with a union actually representing a majority of the employees and recognized as such by the employer.

*Id.* at 341, 98 S.Ct. at 655. We are persuaded that this holding controls the outcome of this case and supports the district court's summary judgment.[4]

As the party resisting the motion for summary judgment plaintiff carried the burden of demonstrating that OCAW's lack of majority status still remained in dispute. The transcript of that hearing indicates James conceded he could not prove that OCAW represented a majority of the employees on the project either at the time of the negotiations on or about August 15–17, 1977, or prior to OCAW's withdrawal of the agreement on August 19, 1977. OCAW, as the union-party to this agreement, properly advanced its own lack of majority status as a defense in this action.

■ Allowing the union-party to so defend itself does not frustrate the policy considerations supporting prehire agreements but rather reaffirms the view that such contracts are preliminary in nature and in no way are intended to impair the freedom of the employees to select their own bargaining representative.

■ Appellant further contends that the existence of a union security clause in the proposed agreement guaranteed or perfected OCAW's subsequent majority status, despite the fact such clauses are illegal in Iowa. Iowa Code § 731.5 (1979). *NLRB v. Local No. 103, Iron Workers, supra,* 434 U.S. at 345–46, 98 S.Ct. at 657–58, indicates that for purposes of determining nonenforceability of a prehire agreement on grounds of a union's minority status, such status is determined on the basis of that union's actual status on a particular project site, citing *NLRB v. Irvin, supra,* 475 F.2d 1265 (3d Cir. 1973). James' admitted inability to prove majority status and the existence of an illegal union security clause cannot give rise to a legal presumption of majority status.

We are equally persuaded summary judgment could have been granted based on unrefuted evidence that the union-party withdrew its offer to enter into a prehire agreement prior to James' acceptance. The telegram setting forth the reasons for withdrawal was received before James was in receipt of the agreement sent to him for signature. Just as an unenforceable contract cannot support claims of breach and inducement to breach, neither can a nonexistent contract support these claims.

Finally, although we do not affirm on the basis of the remaining ground, we agree with the district court that the agreement was void *ab initio* under 29 U.S.C. § 158(f)

---

4. In *Contractors, Laborers, Teamsters and Engineers Health & Welfare Plan v. Assoc. Wrecking Co.,* 638 F.2d 1128 (8th Cir. 1981) this court found no sanction in the Supreme Court's decision in *Iron Workers* or in the policies underlying § 8(f) for permitting an employer to unilaterally abrogate a validly executed prehire agreement (withholding fringe benefits) even though the union had not achieved majority status. We concluded that since "[t]hose payments inure to the benefit of the individual employees at the time of employment, regard-

less of the majority status of the union[,]" the absence of majority status does not constitute a "per se bar to an action for breach of a § 8(f) agreement * * *." *Id.* at 1133, 1134. However, as *Contractors* is factually distinguishable from the case at bar, our holding there is not inconsistent with our adherence to *Iron Workers* in this opinion. There, the prehire agreement had been operable for two years and we were asked to enforce it retrospectively. Here, the agreement had never been operable and we are being asked to enforce it prospectively.

due to James' illegal assistance to OCAW in its organizational efforts.

Affirmed.

BRIGHT, Circuit Judge, concurring.

I concur in the result for reasons set forth by the majority in its alternate ground for affirmance as discussed in the penultimate paragraph of the panel opinion.

In my view, contrary to that of the majority, *NLRB v. Local No. 103, Iron Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978), does not control the outcome of this case as the present controversy arises in the context of an alleged breach of contract, not in the context of an unfair labor practice as was the situation in *Iron Workers*. Additionally, therefore, I would note that *Contractors, Laborers, Teamsters and Engineers Health & Welfare Plan v. Associated Wrecking Co.*, 638 F.2d 1128 at 1130 n.5 (8th Cir. 1981), does not govern the disposition of this controversy because the record establishes that the parties did not consummate any prehire agreement.